**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| MIAO XIN HU and JOHN DOES 1-100, <br> *on behalf of themselves and others similarly situated*, | Case No.: |
| | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | JURY TRIAL DEMANDED |
| v. | |
| GOLDEN ORCHID, LTD. d/b/a KIMLAN FOODS <br> U.S.A. and KIMLAN FOODS CO., LTD., | |
| Defendants. | |

---

Plaintiffs, MIAO XIN HU and JOHN DOES 1-100 (together, "Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, as and for their Complaint against the Defendants, GOLDEN ORCHID, LTD. d/b/a KIMLAN FOODS U.S.A. and KIMLAN FOODS CO., LTD. (hereinafter, "Defendants"), alleges the following based upon personal knowledge as to themselves and their own action, and, as to all other matters, respectfully alleges, upon information and belief, as follows (Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery):

## NATURE OF THE ACTION

1.  Plaintiffs, MIAO XIN HU and JOHN DOES 1-100, on behalf of themselves and others similarly situated, by and through their undersigned attorneys, bring this class action against Defendants, GOLDEN ORCHID, LTD. d/b/a KIMLAN FOODS U.S.A. and KIMLAN FOODS CO., LTD., for the deceptive practice of marketing their jarred preserved food products as free of preservatives when they contain Citric Acid, a non-natural, highly chemically processed ingredient regularly used as a preservative in industrially made food and beverage products. Citric acid is used in the following products:

(i)     Kimlan Pickled Cucumber – 7 oz. and 14 oz. sizes
(ii)    Kimlan Chili Radish – 7 oz. and 14 oz. sizes
(iii)   Any other jarred Kimlan product that contains Citric Acid
        (collectively, "Products").

2.  This case is about the deceptive manner in which the Defendants labeled, packaged and marketed their Products to the general public during the Class Period. Defendants' promotion of the Products is deceptive because it builds upon the fiction that the Products are contain no added preservatives, when they are not.

3.  Defendants' "No Preservatives Added" Claim is deceptive. Defendants engaged in deceptive labeling practices by failing to disclose that the Products contain Citric Acid as a preservative and/or by expressly representing on the front label that the Products contain "No Preservatives." All of the Products contain citric acid, which is commonly used as a preservative in commercial food and beverage  products. Fresh, high quality produce, as claimed to be used by Defendants, is fertile ground for bacterial/mold growth. Without the addition of preservatives, a jar of fresh produce would certainly not keep for weeks as intended.

2

4.   By marketing the Products as being free of preservatives, Defendants wrongfully capitalized on and reaped enormous profits from consumers' strong preference for food products without the addition of preservatives.

5.   Plaintiffs bring this proposed consumer class action on behalf of themselves and all other persons nationwide, who, from the applicable limitations period up to and including the present ("Class Period"), purchased for consumption and not resale any of Defendants' Products.

6.   Defendants violated statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent and unconscionable trade and business practices and false advertising. These statutes are:

1) Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
2) Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
3) Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
4) Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
5) California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
6) Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
7) Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
8) Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
9) District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*
10) Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*
11) Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*
12) Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*
13) Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*
14) Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*
15) Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*
16) Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*
17) Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*
18) Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*
19) Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*
20) Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*
21) Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*
22) Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;
23) Michigan Consumer Protection Act, § § 445.901, *et seq.;*

24) Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*
25) Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*
26) Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*
27) Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*
28) Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*
29) Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*
30) New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.;*
31) New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 *1, et seq.;*
32) New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 *1, et seq.;*
33) New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*
34) North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*
35) North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*
36) Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*
37) Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*
38) Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*
39) Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*
40) Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*
41) South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*
42) South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 *1, et seq.;*
43) Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*
44) Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*
45) Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*
46) Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*
47) Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*
48) Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*
49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*
50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

7.    Defendants marketed their Kimlan Products in a way that is deceptive to consumers under consumer protection laws of all fifty states and the District of Columbia. Defendants have been unjustly enriched as a result of their conduct. For these reasons, Plaintiffs seek the relief set forth herein.

## JURISDICTION AND VENUE

8.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative class is a citizen of a different state than Defendants, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

9.  The Court has jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

10.  The Court has jurisdiction over the state law claims because they form part of the same case or controversy under Article III of the United States Constitution.

11.  Alternatively, the Court has jurisdiction over all claims alleged herein pursuant to 28 U.S.C § 1332 because the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

12.  The Court has personal jurisdiction over Defendants because their Products are advertised, marketed, distributed, and sold throughout New York State; Defendants engaged in the wrongdoing alleged in this Complaint throughout the United States; including in New York State; Defendants are authorized to do business in New York State; and Defendants have sufficient minimum contacts with New York and/or otherwise have intentionally availed themselves of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendants are engaged in substantial and not isolated activity within New York State.

13.  Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff MIAO XIN HU is a citizen of New York and have purchased the Products

from Defendants in this District. Moreover, Defendants distributed, advertised, and sold the Products, which are the subject of the present Complaint, in this District.

## PARTIES

*Plaintiffs*

14.   Plaintiff MIAO XIN HU is, and at all times relevant hereto has been, a citizen of the State of New York and resides in Kings County. During the Class Period, Plaintiff HU purchased numerous Kimlan Products, including the Kimlan Pickled Cucumber – 14 oz. Product, for personal consumption within the State of New York. Plaintiff  HU purchased the Products from supermarkets including but not limited to Chang Jiang Supermarket located in Queens County. The purchase price was $2.99 (or more) for the Product. Plaintiff  HU substantially relied on Defendants' "No Preservatives" claims in deciding to purchase the Products. Plaintiff HU purchased the Products at a premium price and was financially injured as a result of Defendants' deceptive conduct as alleged herein. Further, should Plaintiff HU encounter the Products in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging. However, Plaintiff HU would still be willing to purchase the current formulation of the Products, absent the price premium, so long as Defendants engages in corrective advertising.

15.   Plaintiffs JOHN DOES 1-100 are, and at all times relevant hereto has been, citizens of the any of the fifty states and the District of Columbia. During the Class Period, Plaintiffs JOHN DOES 1-100 purchased the Products for personal consumption or household use within the United States. Plaintiffs purchased the Products at a premium price and were financially injured as a result of Defendants' deceptive conduct as alleged herein.

*Defendants*

16. Defendant GOLDEN ORCHID, LTD. d/b/a KIMLAN FOODS U.S.A. is a corporation organized under the laws of California with headquarters at 3330 S. Garfield Ave, Building 102, Unit A, Commerce, CA 90040 and an address for service of process at Vicky Chung, 12717 Ann St., Santa Fe Springs, CA 90670. Defendant manufactures, markets, distributes and sells jarred food products under the brand Kimlan, which includes the Products.

17.  Defendant KIMLAN FOODS CO., LTD., is a corporation organized under the laws of Taiwan with headquarters at No. 236, Jieshou Road, Daxi, Taoyuan, Taiwan. Defendant manufactures, markets, distributes and sells jarred food products under the brand Kimlan, which includes the Products.

18.  Defendants jointly develop, manufacture, distribute, market and sell jarred food products throughout the fifty states and the District Columbia. The labeling, packaging, and advertising for the Kimlan Products, relied upon by Plaintiffs, were prepared and/or approved by Defendants and their agents, and were disseminated by Defendants and their agents through advertising containing the misrepresentations alleged herein. Such labeling, packaging and advertising were designed to encourage consumers to purchase the Products and reasonably misled the reasonable consumer, i.e. Plaintiffs and the Class, into purchasing the Products. Defendants owned, manufactured and distributed the Products, and created and/or authorized the unlawful, fraudulent, unfair, misleading and/or deceptive labeling, packaging and advertising for the Products.

## FACTUAL ALLEGATIONS

**Kimlan Jarred Products**

19.  Defendants market the Kimlan Products as jarred, preserved food products available at most Chinese supermarket chains, Amazon.com and other retail outlets throughout the United States.

20.  Defendants have consistently conveyed the very specific message to consumers throughout the United States, including Plaintiffs and Class members, that the Products contain no preservatives.

**Defendants' No Preservatives Claims Violate Identical State and Federal Law**

21.  Defendants' labeling, packaging and marketing practices are deceptive and or misleading because the Products fail to disclose that the citric acid is used as a preservative and/or that the Products prominently represent on the front label, that they contain "No Preservatives." All Products use citric acid (2-hydroxypropane-1,2,3-tricarboxylic acid), a non-natural, highly chemically processed ingredient regularly used as a preservative (due to its acidic pH level which creates an environment where bacteria cannot thrive) in ready-to-drink tea products.

22.  The FDCA provides that "[a] food shall be deemed misbranded – (a) (1) its labeling is false or misleading in any particular, or … (k) If it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, *unless* it bears labeling stating that fact… ." 21 U.S.C. §§ 343 (a)(1), 343 (k).

23.  Defendants' packaging and advertising of the Products also violate various state laws against misbranding which mirror federal law. New York and other state law broadly

prohibit the misbranding of food in language identical to that found in regulations promulgated

pursuant to the FDCA, 21 U.S.C. §§ 343 *et seq.*:

> Pursuant to N.Y. Agm. Law § 201, "[f]ood shall be deemed to be misbranded: 1.
> If its labeling is false or misleading in any particular…11. If it bears or contains
> any artificial flavoring, artificial coloring, or permitted chemical preservative,
> unless it bears labeling stating that fact."

24.  The term "chemical preservative" means "any chemical that, when added to food

tends to prevent or retard deterioration thereof[.]" 2l C.F.R. § 101.22(a)(5).

25.  While citric acid is listed in the fine print on the back of the Product in the list of

ingredients (as shown below), Defendants deliberately made no mention of the function of the

citric acid in violation of state and federal laws:









26.   The above images are of the front and back labels of the Kimlan Pickled Cucumber Product and Kimlan Chili Radish Product. The Pickled Cucumber Product lists the following ingredients: Cucumber, Water, Sugar, Soy Sauce, Salt, and Citric Acid, and the Chili Radish Product, which lists the following ingredients: Radish, Water, Soy sauce, Sugar, Salt, Chili, Soybean oil, Sesame oil and Citric Acid.

27.   While the acidic pH of citric acid would most certainly provide tartness to the Products, such explanation is pretextual because the real function of the citric acid in the Products is as a preservative.[4]

28.   The U.S. Food and Drug Administration ("FDA") routinely required that food manufacturers disclose the fact that citric acid is used as a preservative. In a Warning Letter dated October 6, 2010, the FDA warned the manufacturers of the Chiquita brand "Pineapple

---

[4] *See, e.g.,* Lawrence, Clare L., et al., *Evidence of a new role for the high-osmolarity glycerol mitogen-activated protein kinase pathway in yeast: regulating adaptation to citric acid stress,* MOLECULAR AND CELLULAR BIOLOGY 24.8 (2004): 3307-3323.

Bites with Coconut" and "Pineapple Bites" products, that they are in violation of the FDCA and the federal regulations promulgated pursuant to the FDCA:

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservatives ascorbic acid and <u>citric acid but their labels fail to declare these preservatives with a description of their functions</u>. 21 CFR 101.22."

See **EXHIBIT A**, FDA Warning Letter dated October 6, 2010 (emphasis added).

29. Defendants' misleading labeling practices go even further. Apart from not having disclosed the function of the citric acid, Defendants expressly labeled the Products as "No Preservatives," even though such was patently false.

30. Because the Products similarly contain citric acid and Defendants similarly "fail[ed] to declare [such] preservative with a description of [its] functions," *see id.*, and because the Products are expressly labeled as containing "No Preservatives," the Products are misbranded food under the FDCA and state laws which incorporate by reference federal food labeling regulations. 21 U.S.C. §§ 343(a)(1), 343(k); N.Y. Agm. Law § 201.

**The Impact of Defendants' Deceptive Conduct**

31. By representing the Products as being free of preservatives, Defendants sought to capitalize on consumers' preference for natural Products with no preservatives and the association between such Products and a wholesome way of life. Consumers are willing to pay more for such Products because of this association as well as the perceived higher quality, health and safety benefits and low impact on the environment.

32. As a result of Defendants' deception, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that claimed to be free of preservatives.

32. Although Defendants represented that the Products are free of preservatives, they failed to also disclose material information about the Products; the fact that they contained

unnatural, synthetic, and/or artificial ingredients which is used as a preservative. This non-disclosure, while at the same time branding the Products as free of preservatives was deceptive and likely to mislead a reasonable consumer, including Plaintiffs and Class members.

33.  A representation that a product is free of preservatives is material to a reasonable consumer when deciding to purchase a product.

34.  Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendants' Products are "misbranded," i.e., not legally salable, or capable of legal possession, and/or contain highly processed ingredients.

35.  Plaintiffs did not know, and had no reason to know, that the Products were not free of preservatives.

36.  Defendants' Product labeling and misleading online and otherwise marketing campaign was a material factor in Plaintiffs' and Class members' decisions to purchase the Products. Relying on Defendants' deceptive and/or misleading Product labeling and other promotional material, Plaintiffs and Class members believed that they were getting Products that and contain no preservatives. Had Plaintiffs known the truth about Defendants' Products, they would not have purchased them.

37.  Defendants' Product labeling as alleged herein is deceptive and misleading and was designed to increase sales of the Products. Defendants' misrepresentations are part of their systematic product packaging practice.

38.  At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

39.   Defendants' false and deceptive labeling is misleading and in violation of the FDCA, food labeling laws and consumer protection laws of each of the fifty states and the District of Columbia, and the Products at issue are misbranded as a matter of law. Misbranded products cannot be legally manufactured, advertised, distributed, held or sold in the United States. Plaintiffs and Class members would not have bought the Products had they known they were misbranded and illegal to sell or possess.

40.   As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

41.   Plaintiffs and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased Products with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products that did not claim to contain no preservatives.

**Plaintiffs Were Injured as a Result of Defendants' Misleading and Deceptive Conduct**

42.   Defendants' labeling as alleged herein is false and misleading and was designed to increase sales of the Products at issue. Defendants' misrepresentations are part of their systematic labeling practice.

43.   Plaintiffs and Class members were exposed to and relied on Defendants' labeling, packaging, as well as extensive marketing campaign of the Products, including misrepresentations made via social media as stated herein. At the time of purchase, Plaintiffs and Class members read the labels on Defendants' Products, including labels which represented that the Products were free of preservatives.

44. Defendants' labeling claims were a material factor in Plaintiffs and Class members' decisions to purchase the Products. Based on Defendants' claims, Plaintiffs and Class members believed that the Products were a better and healthier choice than other available tea products.

45. Plaintiffs and Class members did not know that the Products was not free of preservatives. Plaintiffs and Class members would not have bought the purchased Products had they known that the Products all contain citric acid, which is highly processed, industrially produced and used as a preservative.

46. Plaintiffs and Class members were exposed to these misrepresentations prior to purchase and relied on them. As a result of such reliance, Plaintiffs and Class members deemed the Products to be more preferable to other products which do not claim to be free of preservatives. Plaintiffs and Class members would not have bought the Products had they not been misled by Defendants' misrepresentations into believing that the Products were better and healthier than they were.

47. At the point of sale, Plaintiffs and Class members did not know, and had not reason to know, that Defendants' Products were misbranded as set forth herein, and would not have bought the Products had they known the truth about them.

48. As a result of Defendants' misrepresentations, Plaintiffs and thousands of others throughout the United States purchased the Products.

49. Defendants' labeling, advertising, and marketing as alleged herein is false and misleading and designed to increase sales of the Products. Defendants' misrepresentations are a part of an extensive labeling, advertising and marketing campaign, and a reasonable person would attach important to Defendants' representations in determining whether to purchase the

Products at issue. Plaintiffs and Class members would not have purchased Defendants' misbranded Products had they known they were misbranded.

50.   Plaintiffs and the Class (defined below) have been damaged by Defendants' deceptive and unfair conduct in that they purchased Products with false and deceptive labeling and paid premium prices they otherwise would not have paid over other comparable products that did not claim to be free of preservatives.

<u>**CLASS ACTION ALLEGATIONS**</u>

*The Nationwide Class*

51.   Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class (the "Class"):

> All persons or entities in the United States who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

*The New York Class*

52.   Plaintiff HU seeks to represent a class consisting of the following subclass (the "New York Class"):

> All New York residents who made retail purchases of the Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate.

The proposed Classes exclude current and former officers and directors of Defendants, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which they have or have had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

53.   Plaintiffs reserve the right to revise the Class definition based on facts learned in the course of litigating this matter.

54.   This action is proper for class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiffs at this time, Plaintiffs are informed and believe that there are thousands of Class members. Thus, the Class is so numerous that individual joinder of all Class members is impracticable.

55.   Questions of law and fact arise from Defendants' conduct described herein. Such questions are common to all Class members and predominate over any questions affecting only individual Class members and include:

a.   whether labeling "No Preservatives Added" on Products containing Citric Acid, which is used as a preservative, was false and misleading;

b.   whether Defendants engaged in a marketing practice intended to deceive consumers by labeling Products as having "No Preservatives Added", even though such Products contained one or more highly processed ingredients, including Citric Acid;

c.   whether Defendants deprived Plaintiffs and the Class of the benefit of the bargain because the Products purchased were different than what Defendants warranted;

d.   whether Defendants deprived Plaintiffs and the Class of the benefit of the bargain because the Products they purchased had less value than what was represented by Defendants;

e.   whether Defendants caused Plaintiffs and the Class to purchase a substance that was other than what was represented by Defendant;

f.   whether Defendants have been unjustly enriched at the expense of Plaintiffs and other Class members by their misconduct;

g.   whether Defendants must disgorge any and all profits they have made as a result of their misconduct; and

h.   whether Defendants should be enjoined from marketing the Products as having "No Preservatives Added," and whether Defendants should be required to disclose the fact that an ingredient was used as a preservative.

56.   Plaintiffs' claims are typical of those of the Class members because Plaintiffs and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiffs purchased Defendants' Products and sustained similar injuries arising out of Defendants' conduct in violation of New York State law.  Defendants' unlawful, unfair and fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced.  The injuries of the Class were caused directly by Defendants' wrongful misconduct.  In addition, the factual underpinning of Defendants' misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all members of the Class. Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

57.   Plaintiffs will fairly and adequately represent and pursue the interests of the Class and have retained competent counsel experienced in prosecuting nationwide class actions. Plaintiffs understand the nature of their claims herein, have no disqualifying conditions, and will vigorously represent the interests of the Class. Neither Plaintiffs nor Plaintiffs' counsel have any interests that conflict with or are antagonistic to the interests of the Class. Plaintiffs have retained

highly competent and experienced class action attorneys to represent their interests and those of the Class. Plaintiffs and Plaintiffs' counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and will diligently discharge those duties by vigorously seeking the maximum possible recovery for the Class.

58. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

59. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

60. The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

61. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

Additionally, individual actions may be dispositive of the interest of all members of the Class, although certain Class members are not parties to such actions.

62. Defendants' conduct is generally applicable to the Class as a whole and Plaintiffs seek, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendants' systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

63. Plaintiff HU realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

64. Plaintiff HU brings this claim on behalf of herself and the other members of the Class for an injunction for violations of New York's Deceptive Acts or Practices Law, General Business Law § 349 ("NY GBL").

65. NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

66. Under the § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

67. Any person who has been injured by reason of any violation of the NY GBL may bring an action in their own name to enjoin such unlawful act or practice, an action to recover

their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendants willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

68.  The practices employed by Defendants, whereby Defendants labeled, packaged, and marketed their Products as being free of preservatives were unfair, deceptive, and misleading and are in violation of the NY GBL § 349.

69.  The foregoing deceptive acts and practices were directed at customers.

70.  Defendants should be enjoined from labeling their Products as containing "No Preservatives," and should be required to disclose that one or more ingredients were used as preservatives, as described above pursuant to NY GBL § 349.

71.  Plaintiff HU, on behalf of herself and all others similarly situated, respectfully demands a judgment enjoining Defendants' conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL, and such other relief as this Court deems just and proper.

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

72.  Plaintiff HU realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

73.  Plaintiff HU brings this claim on behalf of herself and the other members of the Class for violations of NY GBL § 349.

74.  By the acts and conduct alleged herein, Defendants committed unfair or deceptive acts and practices by misbranding their Products as being free of preservatives.

22

75.   The practices employed by Defendants, whereby Defendants advertised, promoted, and marketed that their Products are free of preservatives were unfair, deceptive, and misleading and are in violation of NY GBL § 349.

76.   The foregoing deceptive acts and practices were directed at consumers.

77.   Plaintiff HU and the other Class members suffered a loss as a result of Defendants' deceptive and unfair trade acts. Specifically, as a result of Defendants' deceptive and unfair trade acts and practices, Plaintiff HU and the other Class members suffered monetary losses associated with the purchase of Products, *i.e.*, the purchase price of the Product and/or the premium paid by Plaintiff HU and the Class for said Products.

## COUNT III

## NEGLIGENT MISREPRESENTATION
### (All States)

78.   Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

79.   Defendants, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class.

80.   In making the false, misleading, and deceptive representations and omissions, Defendants knew and intended that consumers would pay a premium for Products labeled as "No Preservatives Added" over comparable products that are not so labelled, furthering Defendants' private interest of increasing sales for their Products and decreasing the sales of products that are truthfully offered as containing no preservatives by Defendants' competitors, or those that do not claim to be free of preservatives.

81.    As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiffs and the other Class members in that they paid a premium price for Products that were not as represented.

82.    In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants have failed to fulfill their duties to disclose the material facts set forth above. The direct and proximate cause of this failure to disclose was Defendants' negligence and carelessness.

83.    Defendants, in making the misrepresentations and omissions, and in doing the acts alleged above, knew or reasonably should have known that the representations were not true. Defendants made and intended the misrepresentations to induce the reliance of Plaintiffs and members of the Class.

84.    Plaintiffs and members of the Class relied upon these false representations and nondisclosures by Defendants when purchasing the Products, upon which reliance was justified and reasonably foreseeable.

85.    As a result of Defendants' wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the Products and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

**COUNT IV**

**BREACH OF EXPRESS WARRANTIES**
**(All States)**

86.    Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

87.   Defendants provided Plaintiffs and other members of the Class with written express warranties, including, but not limited to, warranties that their Products contain no preservatives.

88.   This breach resulted in damages to Plaintiffs and the other members of the Class who bought Defendants' Products but did not receive the goods as warranted in that the Products were not as healthy nor as pure as they appear to be.

89.   As a proximate result of Defendants' breach of warranties, Plaintiffs and the other Class members have suffered damages in an amount to be determined by the Court and/or jury, in that, among other things, they purchased and paid for Products that did not conform to what Defendants promised in their promotion, marketing, advertising, packaging and labeling, and they were deprived of the benefit of their bargain and spent money on products that did not have any value or had less value than warranted or products that they would not have purchased and used had they known the true facts about them.

**COUNT V**

**UNJUST ENRICHMENT**
**(All States)**

90.   Plaintiffs reallege and incorporate by reference the allegations contained in all preceding paragraphs, and further allege as follows:

91.   As a result of Defendants' deceptive, fraudulent and misleading labeling, packaging, advertising, marketing and sales of Products, Defendants were enriched, at the expense of Plaintiffs and members of the Class, through the payment of the purchase price for Defendants' Products.

92.   Plaintiffs and members of the Class conferred a benefit on Defendants through purchasing the Products, and Defendants have knowledge of this benefit and have voluntarily accepted and retained the benefits conferred on it.

25

93.    Defendants will be unjustly enriched if they are allowed to retain such funds, and each Class member is entitled to an amount equal to the amount they enriched Defendants and for which Defendants have been unjustly enriched.

94.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from Plaintiffs, and all others similarly situated, in light of the fact Defendants have misrepresented that the Products are free of preservatives, when in fact, the Products contain the synthetic, unnatural ingredient Citric Acid, which is used as a preservative.

95.    Defendants profited from their unlawful, unfair, misleading, and deceptive practices and advertising at the expense of Plaintiffs and Class members, under circumstances in which it would be unjust for Defendants to be permitted to retain said benefit.

96.    Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact and has lost money or property as a result of Defendants' actions, as set forth herein. Defendants are aware that the claims and/or omissions that they made about the Products are false, misleading, and likely to deceive reasonable consumers, such as Plaintiffs and members of the Class.

97.    Plaintiffs and Class members do not have an adequate remedy at law against Defendants (in the alternative to the other causes of action alleged herein).

98.    Accordingly, the Products are valueless such that Plaintiffs and Class members are entitled to restitution in an amount not less than the purchase price of the Products paid by Plaintiffs and Class members during the Class Period.

99.    Plaintiffs and Class members are entitled to restitution of the excess amount paid for the Products, over and above what they would have paid if the Products had been adequately

advertised, and Plaintiffs and Class members are entitled to disgorgement of the profits Defendants derived from the sale of the Products.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek judgment against Defendants, as follows:

A.    For an order certifying the nationwide Class and under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent members of the Class;

B.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs and the nationwide Class;

D.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For an order of restitution and all other forms of equitable monetary relief;

G.    For injunctive relief as pleaded or as the Court may deem proper;

H.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.    Any other relief the Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiffs, on behalf of themselves and all others similarly situated, hereby demand a jury trial on all claims so triable.

Dated: May 4, 2015

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiffs and the Class*

By:   /s/ C.K. Lee
        C.K. Lee, Esq.

28